SHIRLEY LUSK, A MINOR, BY HER FATHER AND NEXT FRIEND, CHARLES E. LUSK, APPELLANT, v. COUNTY OF YORK, NEBRASKA, ET AL., APPELLEES.

64 N. W. 2d 338

Filed May 14, 1954. No. 33504.

*Keenan & Corbitt, John L. Riddell,* and *Wallace W. Angle,* for appellant.

*John D. Zeilinger* and *Kirkpatrick & Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Charles E. Lusk, as father and next friend of his minor daughter, Shirley Lusk, brought this action in her behalf against defendants County of York and Jack Noodell to recover damages for personal injuries sustained by the daughter in an accident while she was riding as a guest in an automobile owned and driven by Jack Noodell.

At the conclusion of plaintiff's evidence the trial court sustained the County of York's motion for directed verdict and dismissed it from the case for insufficiency of the evidence to sustain a verdict and judgment. No appeal was taken therefrom so the County of York is not now a defendant before this court. Therefore, Shirley Lusk will be hereinafter called plaintiff and Jack Noodell will be called defendant.

Plaintiff alleged in her petition that on September 12, 1952, her defendant host was guilty of gross negligence which proximately caused the accident and injuries because he: (1) Drove his car at an excessive speed on a strange and unsafe road at night; (2) disregarded warnings of occupants of the car that the road was unsafe; and (3) failed to keep a proper lookout and have his car under reasonable control, all of which caused it to swerve across the highway and land in the bottom of a creek parallel with the highway a few miles northeast of York.

Defendant's answer admitted that plaintiff was his guest in a 1948 Dodge automobile owned and driven by him, and that an accident occurred at the time and place involved, but denied generally and alleged that the accident was unavoidable and not caused by any negligence on his part at a time when he was con-

fronted with a sudden emergency. Plaintiff's reply thereto denied generally and specifically denied that the accident was caused by a sudden emergency.

Upon trial to a jury, defendant's motion to direct a verdict in his favor for insufficiency of the evidence as a matter of law to establish that he was guilty of gross negligence, made at conclusion of plaintiff's evidence and renewed at conclusion of all the evidence, was overruled. Thereupon the issues were submitted to the jury, which returned a verdict for plaintiff and judgment was rendered thereon. Thereafter defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, whereupon the trial court overruled his motion for new trial, but sustained his motion for judgment notwithstanding the verdict, set aside the verdict and judgment, rendered a judgment accordingly for defendant, and dismissed plaintiff's cause of action with prejudice. Therefrom plaintiff appealed to this court, assigning that the trial court erred in so doing. We conclude that the assignment should not be sustained.

We have recently reaffirmed well-established rules of law which have application and are controlling in this case. In that regard, we held in Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184: "A motion for directed verdict or its equivalent, or for judgment notwithstanding the verdict, must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the evidence.

"Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What

would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence.

"A series of acts of ordinary negligence may, under certain circumstances, operate to produce gross negligence but not necessarily so.

"A verdict should not be directed, or a cause of action dismissed, or a judgment entered notwithstanding the verdict, unless the court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach such degree of negligence that is considered gross.

"When evidence is resolved most favorably toward the existence of gross negligence, and thus a fixed state of facts had, the question of whether or not such facts will support a finding of the existence of gross negligence is a question of law."

In Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180, we also held that: "The burden of proof is upon a guest, riding in an automobile by invitation, to prove by a preponderance of the evidence, if he seeks to hold the owner or operator thereof liable for damages, that such owner or operator was guilty of gross negligence. Failure to so prove, or the fact that the operator of the automobile may have been guilty of ordinary negligence, is insufficient to warrant a recovery in favor of the guest."

Such case also reaffirmed that violation of the provisions of section 39-7,108, R. R. S. 1943, with regard to speed, was not negligence but simply evidence of negligence, and held: "Excessive speed of a vehicle does not necessarily establish gross negligence, although it is a factor to be considered.

"It is not necessary in all cases that the operator of a car be aware of impending danger in order to hold him guilty of gross negligence, but that is a circumstance which should be considered."

The evidence has been examined and pertinent parts thereof will be summarized in the light of such rules.

On Friday, September 12, 1952, defendant was a teacher and coach in Thayer High School. As a stranger from another city, he had only been in Thayer about 2 weeks at the time of the accident. After school on September 12, 1952, all of the high school students had a picnic at a milldam site near Thayer. After the picnic they decided to attend the movies at York. Defendant, a licensed driver, owned a 1948 Dodge club coupe in good condition, so five girl students, including plaintiff, rode with him to York as guests in his car. There they attended a show, then had ice cream refreshments, and started home. Plaintiff and another girl were to be taken home first. Defendant did not know the route to take for that purpose, and was not familiar with the highways, so plaintiff, who was familiar in every respect therewith, directed the route they should take. With his car lights on, they traveled 2 miles east of York on pavement, then turned north on a graveled highway, driving from 35 to 50 miles an hour. It was a clear night, about 10:45 p. m., and the highway, about 22 to 24 feet wide, was dry. With exceptions hereinafter discussed, the highway was in good condition. The radio in the car was on while they listened to Lombardo's orchestra. After they turned north, plaintiff warned defendant that there was a rough spot at an intersection ahead of them. Thereafter he first slowed down to 30 or 35 miles an hour, and then almost stopped because he did not know where the intersection was, so they passed over it safely. From that point, the highway went down hill for about ½ mile to a rough spot 65 to 70 feet long, having ruts and chuck holes of various sizes and depths over all the highway. There was a right-hand curve in the highway about 400 to 500 feet north of the rough spot. The accident occurred about 125 feet from the south end of that curve. Some 500 feet before they reached the rough spot, defendant was driving about 45 or 50 miles an hour. At that point, plaintiff told defendant to slow down. Whether or not she told him

why is not made clear. It is undisputed, however, that plaintiff and others in the car then told him about the curve ahead and he started to slow down. However, defendant did not see the rough spot and as the car struck the same it suddenly began to swerve and seemed to speed up, out of control, although defendant had no recollection of stepping on the accelerator. He was frightened and had no recollection whether or not he put on the brakes, but he did attempt to prevent the car from swerving by turning the steering wheel back and forth, but the car continued to swerve from one side of the highway to the other and back again, until it struck a ridge of gravel about 8 inches high and 1 foot wide on the east side of the highway, which caused the car to swerve back across to the west side, where it went off the highway, struck a tree, turned over, and landed upside down, headed south, in the bed of unguarded Lincoln Creek about 20 feet below the highway. As a result, plaintiff, who rode on the right side in the back seat, was seriously injured, and this action followed.

It should be stated that before the accident no occupant of the car had ever complained about defendant's manner or method of driving during any of the trips. Further, on September 15, 1952, after the accident, all of the occupants gave statements which in effect exonerated defendant from any negligence causing the accident. Therein they estimated defendant's speed to have been as low as 30 miles an hour, and never at any time more than 35 or 40 miles an hour. True, as witnesses they attempted in one form or another to justify their testimony which was materially different in some respects from that appearing in such statements. However, they were received in evidence, without any objections, and in any event defendant could not have been found guilty of more than ordinary negligence.

In the light of rules heretofore set forth, and their application to the evidence aforesaid, we conclude that the trial court did not err in deciding as a matter of

law that defendant was not guilty of gross negligence. In Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622, cited and quoted with approval in Paxton v. Nichols, *supra*, this court said: "Authorities relied upon by plaintiff for reversal all disclose the ever present imminence of danger visible to, known by, or made known to the driver, together with a persistence in negligence apparently heedless of the consequences thereof; evidence of negligence far in excess of any appearing in the case at bar and from which different minds might reasonably draw different conclusions as to the factual question of gross negligence." That statement is also controlling here.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.